**F!LED**

MAY 2 6 2010 **NF**

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

NF

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **10 CR 0452** |
| ) | |
| v. ) | Violations: Title 18, United States |
| ) | Code, Sections 371, 1030, 1343, |
| BJORN DANIEL SUNDIN, ) | and 2 |
| SHAILESHKUMAR P. JAIN, ) | |
| a.k.a. "Sam Jain," and ) | **JUDGE LINDBERG** |
| JAMES RENO ) | |
| | **MAGISTRATE JUDGE DENLOW** |

## COUNT ONE

The SPECIAL MARCH 2010 GRAND JURY charges:

1.    At times material to this indictment:

### *Entities*

a.    Innovative Marketing, Inc. was a registered corporation in Belize that purported to be in the business of selling anti-virus and computer performance/repair software through the internet and that operated a subsidiary called Innovative Marketing Ukraine that was located in Kiev, Ukraine (hereinafter collectively referred to as "IM").

b.    Byte Hosting Internet Services ("Byte Hosting") was a registered corporation in Cincinnati, Ohio that provided support services to other companies, including the operation of call centers which provided

1

technical and billing support to consumers who purchased goods or services from companies that had a business relationship with Byte Hosting.

c.   In exchange for a fee, multiple legitimate companies allowed to be placed on their websites electronic advertisements for other companies' goods or services (hereinafter collectively referred to as the "Victim Companies").

### *Defendants*

d.   Defendants   BJORN   DANIEL   SUNDIN   and SHAILESHKUMAR P. JAIN, along with others, owned, operated, and controlled IM; defendant JAIN performed the general functions of a Chief Executive Officer and defendant SUNDIN performed the duties of a Chief Technology Officer and a Chief Operating Officer.

e.   Defendant JAMES RENO, along with others, owned, operated, and controlled Byte Hosting; defendant RENO performed the duties of a Chief Executive Officer and President.

### *Definitions*

f.   "Scareware" was a type of computer software designed to mislead and deceive computer users into purchasing anti-virus and computer performance/repair software through the use of false or exaggerated warnings that a user's computer was infected with a computer virus or was

2

otherwise experiencing a defect or performance deficiency that required the user's immediate attention.

g.   "Malware" was a term used to describe various forms of malicious software that caused harm or unwanted and unauthorized effects on a user's computer.

h.   "Critical error" was a term used to describe a serious or significant problem that posed an immediate risk to the functional operation of a user's computer, including computer viruses, privacy violations, and performance defects.

i.   "Browser hijacking" was a process whereby a computer user's internet browser was redirected to another website without the user's permission.

2.   From in or about December 2006, through at least in or about October 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, together with others known and unknown to the grand jury, devised, intended to devise, and participated in a scheme to defraud victim internet users and Victim Companies and to obtain money and

property by means of materially false and fraudulent pretenses, representations, promises, and material omissions, as more fully described below.

### Overview of the Scheme

3.     It was part of the scheme that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others defrauded victim internet users into falsely believing that their computers were infected with malware or were otherwise experiencing a critical error in order to deceive victim internet users into purchasing "Scareware" software products that had limited or no ability to remedy the purported defects.

4.     It was further part of the scheme that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others created fictitious advertising agencies which in turn contacted Victim Companies purporting to represent legitimate third-party entities that sought to place internet-based advertisements on the Victim Companies' websites, when in fact the advertisements were not authorized by the third-party entities.

5.     It was further part of the scheme that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others intentionally failed to pay the Victim Companies the fees promised by the fictitious

advertising agencies for the placement of internet-based advertisements on the Victim Companies' websites.

6. It was further part of the scheme that, through the fictitious advertising agencies, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be placed on the websites of the Victim Companies internet-based advertisements that, unbeknownst to the Victim Companies, contained hidden computer code which, in turn, caused the internet browsers of victim internet users who visited the Victim Companies' websites to be "hijacked" or redirected without their consent to websites controlled by defendants SUNDIN, JAIN, and others.

7. It was further part of the scheme that, after being redirected to a website controlled by defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others, the victim internet user was prompted with a series of materially false error messages which claimed that the user's computer was experiencing a Critical Error and that the victim internet user needed to purchase an IM-distributed software product to remedy the Critical Error.

8. It was further part of the scheme that, through the series of materially false error messages, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused victim internet users in

more than sixty countries throughout the world, including the United States, Sweden, and Ukraine, to purchase software products distributed by defendants SUNDIN, JAIN, and others, including "DriveCleaner" and "ErrorSafe" which defendants SUNDIN, JAIN, and others falsely represented would rid the victim internet users' computers of the purported defects, when in fact the software products performed their stated function minimally or not at all, resulting in losses to victim internet users in excess of $100,000,000 and losses to Victim Companies in excess of $85,000 in the form of the non-payment of fees for advertising space on the Victim Companies' websites.

### Fraudulent Advertising Agencies and Hijacking Advertisements

9.     It was further part of the scheme that in or about March 2007, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be created at least seven fictitious advertising agencies, such as "BurnAds," "UniqAds," "Infyte," "NetMediaGroup," and "ForceUp" (hereinafter collectively referred to as "the fictitious advertising agencies") to place malicious advertisements which falsely appeared to be innocuous advertisements for the goods and services of legitimate third-party entities, thereby concealing that IM was the source of the advertisements and enabling IM to avoid fully paying for the advertising it obtained.

10.    It was further part of the scheme that defendant JAMES RENO aided and abetted defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others in the creation and operation of the fictitious advertising agencies by providing material support as a technical adviser for the computer servers and networks used to facilitate the operation of the fictitious advertising agencies.

11.    It was further part of the scheme that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others knowingly caused the fictitious advertising agencies to falsely represent to Victim Companies that the legitimate third-party entities sought to purchase internet-based advertising on the Victim Companies' websites, when in fact the legitimate third-party entities were unaware of and had not authorized these false representations.

12.    It was further part of the scheme that defendants BJORN DANIEL SUNDIN, SHAILESKUMAR P. JAIN, and others caused the fictitious advertising agencies to send to the Victim Companies emails containing electronic files that appeared to be innocuous web-based advertisements for a particular product or service from a legitimate third-party company unrelated to IM, but in fact contained hidden computer code which, when executed on a user's web browser, caused the browser to be

"hijacked" or redirected to a website defendants SUNDIN, JAIN, and others controlled (the "IM Scareware websites").

13. It was further part of the scheme that on or about February 26, 2007, and on or about March 14, 2007, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted from Germany to Chicago, Illinois electronic mail communications from "Burnads.com" to Company A in order to place internet-based advertisements containing hidden computer code on the website of Company A.

14. It was further part of the scheme that on or about November 5, 2007, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted from the Bahamas to New York an electronic mail communication from "Infyte.com" to Company C in order to place an internet-based advertisement containing hidden computer code on the website of Company C.

15. It was further part of the scheme that on or about March 25, 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted from the Bahamas to Utah an electronic mail communication from "ForceUp.com" to Company D in order to place an

internet-based advertisement containing hidden computer code on the website of Company D.

16.   It was further part of the scheme that on or about April 4, 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted from the Bahamas to California an electronic mail communication from "NetMediaGroup.net" to Company E in order to place an internet-based advertisement containing hidden computer code on the website of Company E.

17.   It was further part of the scheme that on or about April 3, 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted from the Bahamas to Massachusetts an electronic mail communication from "NetMediaGroup.net" to Company F in order to place an internet-based advertisement containing hidden computer code on the website of Company F.

18.   It was further part of the scheme that on or about July 25, 2007, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted from the Bahamas to California an electronic mail communication from "NetMediaGroup.net" to Company G in order to place an internet-based advertisement containing hidden computer code on the website of Company G.

19.    It was further part of the scheme that, in an effort to conceal the hidden code and hijacking capabilities of the advertisements from the Victim Companies, defendants BJORN DANIEL SUNDIN, SHAILESKUMAR P. JAIN, and others caused the hidden code in the advertisements to recognize when the advertisements were being run from computers used by the targeted Victim Companies so that, if the victim companies tested the advertisements, browser hijacking would not occur.

### *Fraudulent Computer Messages to Cause Purchase of IM Products*

20.    It was further part of the scheme that after defendants BJORN DANIEL SUNDIN, SHAILESKUMAR P. JAIN, JAMES RENO, and others caused a victim user to be redirected to an IM Scareware website controlled by defendants SUNDIN, JAIN, and others, the following typically occurred:

a.    The IM Scareware website appeared to the victim user not to be a website at all, but rather a warning message from the internet user's computer operating system.   The warning message falsely informed the internet user that his or her computer had experienced a critical error and prompted the user to click on a box to address the purported error.   Further error message prompts occurred regardless whether the user clicked the box agreeing to proceed or the box declining to proceed or attempted to close the error message window.

10

b.    The IM Scareware website displayed an animated graphical image that gave the appearance that the victim internet user's computer was being scanned for various errors or computer viruses, when in fact no scan of the computer was actually occurring.  At the conclusion of the fake scan, the IM Scareware website displayed the purported results of the scan, which falsely informed the internet user that the scan detected multiple critical errors on the user's computer.

c.    The IM Scareware website then prompted the victim user to download a free trial version of an IM product, falsely promising that the software could repair the nonexistent critical errors.  Defendants BJORN DANIEL SUNDIN, SHAILESKUMAR P. JAIN, JAMES RENO, and others caused to be created multiple download sites, including BSA.SafetyDownload.com, from which victim internet users downloaded the trial versions of IM software products.  Once downloaded, the software presented an animated graphical image to the user which falsely depicted a scan of the user's computer.  During the progress and at the conclusion of the false scan, the trial version of the IM software product displayed the purported results of the scan, which falsely informed the internet user that the scan detected multiple critical errors on the user's computer.  The critical

errors flagged by the IM software were generally a list of innocuous computer files that posed no danger to the user's computer.

21.   It was further part of the scheme that, as a result of the browser hijacking, multiple fraudulent scans, and false error messages, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, JAMES RENO, and others deceived users into purchasing the full paid version of IM software products.    The IM software products ranged in price from approximately $29.99 to $70.00.

22.   It was further part of the scheme that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, JAMES RENO, and others at times defrauded victim users into purchasing multiple IM-distributed software products through a deceptive order screen that kept hidden certain pre-checked option boxes which, when so checked, increased the total number of products being purchased.

23.   It was further part of the scheme that on or about April 2, 2007, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted from Mt. Prospect, Illinois to Ohio the electronic transmission of a credit card payment of approximately $49.95 from Victim A to an IM-controlled bank account to purchase an IM software product.

24.   It was further part of the scheme that on or about July 29, 2007, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted from Oak Lawn, Illinois to Ohio the electronic transmission of a credit card payment of approximately $49.95 from Victim B to an IM-controlled bank account to purchase an IM software product.

25.   It was further part of the scheme that on or about August 1, 2007, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted from Marengo, Illinois to Ohio the electronic transmission of a credit card payment of approximately $59.95 from Victim C to an IM-controlled bank account to purchase an IM software product.

26.   It was further part of the scheme that on or about June 18, 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, JAMES RENO, and others caused to be transmitted from Evanston, Illinois to Florida the electronic transmission of a credit card payment of approximately $109.85 from Victim D to an IM-controlled bank account to purchase a bundle of IM software products, including "Antivirus 2008."

27.   It was further part of the scheme that on or about June 18, 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN,

JAMES RENO, and others caused to be transmitted from Chicago, Illinois to Florida the electronic transmission of a credit card payment of approximately $109.85 from Victim E to an IM-controlled bank account to purchase a bundle of IM software products, including "Antivirus 2008."

28. It was further part of the scheme that on or about June 27, 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, JAMES RENO, and others caused to be transmitted from Palatine, Illinois to Florida the electronic transmission of a credit card payment of approximately $109.85 from Victim F to an IM-controlled bank account to purchase a bundle of IM software products, including "Antivirus 2008."

29. It was further part of the scheme that on or about June 18, 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted from Sweden to Florida the electronic transmission of a credit card payment of approximately $119.41 from Victim G to an IM-controlled bank account to purchase the IM-distributed software product "Antivirus 2008."

30. It was further part of the scheme that on or about October 4, 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted from Sweden to Florida the electronic transmission of a credit card payment of approximately €51.46 from Victim

H to an IM-controlled bank account to purchase the IM-distributed software product, "VirusRemover 2008."

31.    It was further part of the scheme that on or about May 21, 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted from Ukraine to Florida the electronic transmission of a credit card payment of approximately €71.29 from Victim I to an IM-controlled bank account to purchase the IM-distributed software product, "Antivirus 2008."

32.    It was further part of the scheme that on or about August 27, 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted from Ukraine to Florida the electronic transmission of a credit card payment of approximately €53.90 from Victim J to an IM-controlled bank account to purchase the IM-distributed software product, "Antivirus XP 2008."

*Payment Redirection Sites and Financial Network*

33.    It was further part of the scheme that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused multiple merchant accounts to be established, allowing victim-users to purchase the IM products using credit cards.  The multiple merchant accounts were created in part to perpetuate the fraud scheme as, over time,

15

merchant accounts became unusable due to repeated requests for refunds or chargebacks from victim internet users who purchased an IM-distributed software product.

34.   It was further part of the scheme that, in an effort to hide the scope of the fraud scheme and the relationship between the software products, payment websites, and IM, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, JAMES RENO, and others caused multiple payment sites, including "billingbit.com," "bucksbill.com," "software-payment.com," and "bestpaymentsolution.net," to be created, which victim internet users were redirected to in order to make payment for the purchase of IM software products.

35.   It was further part of the scheme that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, JAMES RENO, and others caused credit card processors in the United States and elsewhere, including Credit Card Processor A located in Ft. Lauderdale, Florida, to process payments received from victim internet users made on the multiple payment websites.   Credit Card Processor A deposited funds received from victim internet users' credit card payments into bank accounts controlled by defendants SUNDIN, JAIN, and others throughout the world, including a

bank account held in name of "Versata Software" at the First Caribbean Bank in the British Virgin Islands.

36.   It was further part of the scheme that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused funds deposited by credit card processors to be transferred from the original receiving accounts to additional bank accounts controlled by defendants SUNDIN, JAIN, and others held throughout the world, including multiple accounts held at Skandinaviska Enskilda Banken located in Sweden, Aizkraukles Banka located in Latvia, and Swedbank located in Ukraine.

37.   It was further part of the scheme that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transferred, from bank accounts under defendants' control in Sweden to accounts under defendants' control in Latvia, approximately $7,400,000 and €7,800,000 through approximately 42 separate electronic transmissions, including the following:

a.   An electronic transfer on or about March 22, 2007, of approximately $400,000 from an account in Sweden to an IM bank account in Latvia; and

b.     An electronic transfer on or about April 2, 2007, of approximately $400,000 from an account in Sweden to an IM bank account in Latvia.

### *Fraudulent IM-Distributed Software Products*

38.     It was further part of the scheme that many IM-distributed computer software products that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, JAMES RENO, and others caused victim internet users to purchase, such as "Malware Alarm," "Antivirus 2008," and "VirusRemover 2008," falsely purported to perform various functions, including detecting and removing viruses and other malware, repairing various computer errors, improving computer performance, providing privacy protection for computers connecting to the internet, and preventing computer errors from occurring in the future, when in fact the software failed to perform many of the stated functions.

### *Byte Hosting Customer Support Center*

39.     It was further part of the scheme that defendants BJORN DANIEL SUNDIN, SHAILESH KUMAR P. JAIN, JAMES RENO, and others used Byte Hosting in an effort to deflect complaints from victim internet users who purchased an IM software product and to otherwise

conceal the fraudulent nature of the IM software products and the manner in which they were sold to victim internet users.

40.    It was further part of the scheme that the IM software products purchased by victim internet users supplied a customer support and complaint number linked to a call center at Byte Hosting.

41.    It was further part of the scheme that, knowing the IM-distributed software products to be fraudulent and distributed and sold under fraudulent pretenses, defendant JAMES RENO and others caused call center representatives to be instructed to:

    a.    falsely inform customers that legitimate anti-virus software detected IM-distributed software products as a security threat merely because it was competing software;

    b.    persuade customers with preexisting anti-virus software to remove such software and rely on IM software products as a replacement; and

    c.    report to customers that the IM software products were not fraudulent and that IM was a legitimate company.

42.    It was further part of the scheme that, in an effort to persuade Byte Hosting call center representatives to continue in their employment, defendant JAMES RENO and others caused call center representatives to be

falsely informed that the work they provided was not in furtherance of a scheme to defraud because United States law did not apply to IM and its business practices, citing the fact it was based overseas.

43. It was further part of the scheme that, at times, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, JAMES RENO, and others caused Byte Hosting call center representatives to be authorized to provide refunds for IM-distributed products in an effort to preserve relationships with banks receiving funds from credit card payments associated with IM software products that fielded complaints from victim internet users and discourage victim internet users from notifying their credit card companies or law enforcement of the fact that they were deceived into purchasing fraudulent IM-distributed software products.

44. It was further part of the scheme that on or about June 8, 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, JAMES RENO, and others caused to be transmitted from Georgia to Ohio the telephonic communication of a complaint from Victim K to a Byte Hosting call center representative, following the purchase by Victim K of the IM-distributed software product "IE Antivirus," during which conversation the Byte Hosting call center representative instructed Victim K to remove

Victim K's preexisting legitimate anti-virus software and rely on "IE Antivirus" as a replacement.

45.    It was further part of the scheme that in or about June 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, JAMES RENO, and others caused to be transmitted from Arizona to Ohio the telephonic communication of a complaint from Victim L to a Byte Hosting call center representative, following the purchase by Victim L of the IM-distributed software product "Antivirus 2008," during which conversation the Byte Hosting call center representative informed Victim L that the call center representative was not permitted to disclose the manufacturer of "Antivirus 2008" and could not provide Victim L with a refund.

46.    It was further part of the scheme that on or about June 11, 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, JAMES RENO, and others caused to be transmitted from Michigan to Ohio the telephonic communication of a complaint from Victim M to a Byte Hosting call center representative, following the purchase by Victim M of the IM-distributed software product "Antivirus 2008," during which conversation the Byte Hosting call center representative informed Victim M that the call center representative was not permitted to disclose the manufacturer of "Antivirus 2008" and could not provide Victim M with a refund.

47.    It was further part of the scheme that on or about September 11, 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, JAMES RENO, and others caused to be transmitted from the United Kingdom to Ohio the telephonic communication of a complaint from Victim N to a Byte Hosting call center representative, following the purchase by Victim N of the IM-distributed software product "Antivirus 2008 XP," during which conversation the Byte Hosting call center representative refused to inform Victim N that IM was involved in the distribution of "Antivirus 2008 XP."

48.    It was further part of the scheme that on or about October 16, 2008, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, JAMES RENO, and others caused to be transmitted from Lockport, Illinois to Ohio the telephonic communication of a complaint from Victim O to a Byte Hosting call center representative, following the purchase by Victim O of the IM-distributed software product "Antispywaremaster," during which conversation the Byte Hosting call center representative instructed Victim O to remove Victim O's preexisting legitimate anti-virus software.

### Concealment of the Fraud Scheme

49.    It was further part of the scheme that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, JAMES RENO, and others

concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence of the scheme, and the purposes of the scheme.

### *Approximate Fraud Loss*

50.   It was further part of the scheme that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused victim internet users to purchase over 1,000,000 IM-distributed software products, generating total losses to the victim users in an amount totaling at least $100,000,000.

51.   It was further part of the scheme that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused Victim Companies to suffer total losses in excess of $85,000 in the form of the non-payment of fees for advertising space on the Victim Companies' websites.

52.   On or about March 14, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere

BJORN DANIEL SUNDIN and
SHAILESHKUMAR P. JAIN, aka "Sam Jain,"

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate and foreign commerce from Germany to Chicago, Illinois by means of wire and radio communications, certain writings, signs, signals and sounds; namely,

an electronic mail communication from "Burnads.com" to Company A in order to place an internet-based advertisement containing hidden computer code on the website of Company A;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one of Count One of this indictment as though fully set forth herein.

2.    On or about August 20, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BJORN DANIEL SUNDIN and
SHAILESHKUMAR P. JAIN, aka "Sam Jain,"

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate and foreign commerce from the Bahamas to Washington by means of wire and radio communication, certain writings, signs, signals and sounds; namely, an electronic mail communication from "UniqAds.com" to Company B in order to place an internet-based advertisement, falsely purporting to be an advertisement for Company A, a company headquartered in Chicago, containing hidden computer code on the website of Company B;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THREE

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.  The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one of Count One of this indictment as though fully set forth herein.

2.  On or about November 5, 2007, at New York, New York, and elsewhere,

BJORN DANIEL SUNDIN and
SHAILESHKUMAR P. JAIN, aka "Sam Jain,"

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in foreign commerce from the Bahamas to New York by means of wire and radio communication, certain writings, signs, signals and sounds; namely, an electronic mail communication from "Infyte.com" to Company C in order to place an internet-based advertisement containing hidden computer code on the website of Company C;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FOUR

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one of Count One of this indictment as though fully set forth herein.

2.    On or about March 25, 2008, at West Valley City, Utah, and elsewhere,

BJORN DANIEL SUNDIN and
SHAILESHKUMAR P. JAIN, aka "Sam Jain,"

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in foreign commerce from the Bahamas to Utah by means of wire and radio communication, certain writings, signs, signals and sounds; namely, an electronic mail communication from "ForceUp.com" to Company D in order to place an internet-based advertisement containing hidden computer code on the website of Company D;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FIVE

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one of Count One of this indictment as though fully set forth herein.

2.    On or about April 4, 2008, at El Segundo, California, and elsewhere,

BJORN DANIEL SUNDIN and
SHAILESHKUMAR P. JAIN, aka "Sam Jain,"

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in foreign commerce from the Bahamas to California by means of wire and radio communication, certain writings, signs, signals and sounds; namely, an electronic mail communication from "NetMediaGroup.net" to Company E in order to place an internet-based advertisement containing hidden computer code on the website of Company E;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SIX

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one of Count One of this indictment as though fully set forth herein.

2.     On or about April 3, 2008, at Springfield, Massachusetts, and elsewhere,

BJORN DANIEL SUNDIN and
SHAILESHKUMAR P. JAIN, aka "Sam Jain,"

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in foreign commerce from the Bahamas to Massachusetts by means of wire and radio communication, certain writings, signs, signals and sounds; namely, an electronic mail communication from "NetMediaGroup.net" to Company F in order to place an internet-based advertisement containing hidden computer code on the website of Company F;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SEVEN

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one of Count One of this indictment as though fully set forth herein.

2.    On or about July 25, 2007, at San Francisco, California, and elsewhere,

BJORN DANIEL SUNDIN and
SHAILESHKUMAR P. JAIN, aka "Sam Jain,"

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in foreign commerce from the Bahamas to California by means of wire and radio communication, certain writings, signs, signals and sounds; namely, an electronic mail communication from "NetMediaGroup.net" to Company G in order to place an internet-based advertisement containing hidden computer code on the website of Company G;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT EIGHT

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one of Count One of this indictment as though fully set forth herein.

2.     On or about April 2, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BJORN DANIEL SUNDIN and
SHAILESHKUMAR P. JAIN, aka "Sam Jain,"

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Mt. Prospect, Illinois to Ohio by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the electronic transmission of a credit payment of approximately $49.95 from Victim A to an IM-controlled bank account to purchase an IM software product;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT NINE

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one of Count One of this indictment as though fully set forth herein.

2.     On or about July 29, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BJORN DANIEL SUNDIN and
SHAILESHKUMAR P. JAIN, aka "Sam Jain,"

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Oak Lawn, Illinois to Ohio by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the electronic transmission of a credit card payment of approximately $49.95 from Victim B to an IM-controlled bank account to purchase an IM software product;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TEN

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one of Count One of this indictment as though fully set forth herein.

2.    On or about August 1, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BJORN DANIEL SUNDIN and
SHAILESHKUMAR P. JAIN, aka "Sam Jain,"

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Marengo, Illinois to Ohio by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the electronic transmission of a credit card payment of approximately $59.95 from Victim C to an IM-controlled bank account to purchase an IM software product;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT ELEVEN

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one in Count One of this indictment as though fully set forth herein.

2.     On or about June 18, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Evanston, Illinois to Florida by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the electronic transmission of a credit card payment of approximately $109.85 from Victim D to a bank account operated on behalf of IM to purchase a bundle of software products, including "Antivirus 2008";

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWELVE

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.      The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one in Count One of this indictment as though fully set forth herein.

2.      On or about June 18, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Chicago, Illinois to Florida by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the electronic transmission of a credit card payment of approximately $109.85 from Victim E to a bank account operated on behalf of IM to purchase a bundle of software products, including "Antivirus 2008";

In violation of Title 18, United States Code, Sections 1343 and 2.

## **COUNT THIRTEEN**

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one in Count One of this indictment as though fully set forth herein.

2.     On or about June 27, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Palatine, Illinois to Florida by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the electronic transmission of a credit card payment of approximately $109.85 from Victim F to a bank account operated on behalf of IM to purchase a bundle of software products, including "Antivirus 2008";

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FOURTEEN

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one in Count One in this indictment as though fully set forth herein.

2.    On or about June 18, 2008, at Ft. Lauderdale, Florida, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Sweden to Florida by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the electronic transmission of a credit card payment of approximately $119.41 from Victim G to a bank account operated on behalf of IM to purchase the IM-distributed software product "Antivirus 2008";

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FIFTEEN

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one in Count One of this indictment as though fully set forth herein.

2.     On or about October 4, 2008, at Ft. Lauderdale, Florida, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Sweden to Florida by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the electronic transmission of a credit card payment of approximately €51.46 from Victim H to a bank account operated on behalf of IM to purchase the IM-distributed software product, "VirusRemover 2008";

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SIXTEEN

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one in Count One of this indictment as though fully set forth herein.

2.    On or about May 21, 2008, at Ft. Lauderdale, Florida, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Ukraine to Florida by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the electronic transmission of a credit card payment of approximately €71.29 from Victim I to a bank account operated on behalf of IM to purchase the IM-distributed software product, "Antivirus 2008";

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SEVENTEEN

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one in Count One of this indictment as though fully set forth herein.

2.     On or about August 27, 2008, at Ft. Lauderdale, Florida, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Ukraine to Florida by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the electronic transmission of a credit card payment of approximately €53.90 from Victim J to a bank account operated on behalf of IM to purchase the IM-distributed software product, "Antivirus XP 2008";

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT EIGHTEEN

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one in Count One of this indictment as though fully set forth herein.

2.    On or about May 17, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BJORN DANIEL SUNDIN, and
SHAILESHKUMAR P. JAIN, aka "Sam Jain,"

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate and foreign commerce from Latvia to Chicago, Illinois by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the electronic transmission of a partial payment of approximately $5,463.81 from an IM bank account in Latvia to Company A related to the placement of a hijacking advertisement on Company A's website.

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT NINETEEN

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one in Count One of this indictment as though fully set forth herein.

2.    On or about June 7, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BJORN DANIEL SUNDIN, and
SHAILESHKUMAR P. JAIN, aka "Sam Jain,"

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate and foreign commerce from Latvia to Chicago, Illinois by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the electronic transmission of a partial payment of approximately $12,238.06 from an IM bank account in Latvia to Company A related to the placement of a hijacking advertisement on Company A's website.

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWENTY

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one in Count One of this indictment as though fully set forth herein.

2.    On or about June 8, 2008, at Cincinnati, Ohio, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Georgia to Ohio by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the telephonic communication of a complaint from Victim K to a Byte Hosting call center representative, following the purchase by Victim K of the IM-distributed software product "IE Antivirus," during which conversation the Byte Hosting call center representative instructed Victim K to remove Victim K's preexisting legitimate anti-virus software and rely on "IE Antivirus" as a replacement;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWENTY-ONE

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.     The  Grand  Jury  realleges  and  incorporates  by  reference
paragraphs one to fifty-one in Count One in this indictment as though fully
set forth herein.

2.     In or about June 2008, at Cincinnati, Ohio, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, for the purpose of executing the aforesaid scheme and
attempting to do so, did knowingly cause to be transmitted in interstate
commerce  from  the  Arizona  to  Ohio  by  means  of  wire  and  radio
communications, certain writings, signs, signals and sounds; namely, the
telephonic communication of a complaint from Victim L to a Byte Hosting call
center  representative,  following  the  purchase  by  Victim  L  of  the  IM-
distributed software product "Antivirus 2008," during which conversation the
Byte Hosting call center representative informed Victim L that the call center
representative  was  not  permitted  to  disclose  the  manufacturer  of
"Antivirus 2008" and could not provide Victim L with a refund;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWENTY-TWO

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one in Count One of this indictment as though fully set forth herein.

2.     On or about June 11, 2008, at Cincinnati, Ohio, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Michigan to Ohio by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the telephonic communication of a complaint from Victim M to a Byte Hosting call center representative, following the purchase by Victim M of the IM-distributed software product "Antivirus 2008," during which conversation the Byte Hosting call center representative informed Victim M that the call center representative was not permitted to disclose the distributor of "Antivirus 2008" and could not provide Victim M with a refund;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWENTY-THREE

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one in Count One of this indictment as though fully set forth herein.

2.     On or about September 11, 2008, at Cincinnati, Ohio, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from the United Kingdom to Ohio by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the telephonic communication of a complaint from Victim N to a Byte Hosting call center representative, following the purchase by Victim N of the IM-distributed software product "Antivirus 2008 XP," during which conversation the Byte Hosting call center representative refused to inform Victim N that IM was involved in the distribution of "Antivirus 2008 XP";

In violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT TWENTY-FOUR

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates by reference paragraphs one to fifty-one in Count One of this indictment as though fully set forth herein.

2.    On or about October 16, 2008, at Cincinnati, Ohio, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Lockport, Illinois to Ohio by means of wire and radio communications, certain writings, signs, signals and sounds; namely, the telephonic communication of a complaint from Victim O to a Byte Hosting call center representative, following the purchase by Victim O of the IM-distributed software product "Antispywaremaster," during which conversation the Byte Hosting call center representative refused to inform Victim O that IM was involved in the distribution of "Antispywaremaster";

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWENTY-FIVE

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraph one of Count One of this indictment as though fully set forth herein.

2.     From in or about October 2004, through at least in or about August 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, conspired with each other and with others known and unknown to the Grand Jury to knowingly cause the transmissions of programs, information, codes, and commands, and as a result of such conduct, intentionally caused damage, without authorization, to protected computers, in violation of Title 18, United States Code, Section 1030(a)(5)(A).

3.     It was part of the conspiracy that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and JAMES RENO knowingly agreed to cause the transmission to protected computers of Victim Companies web-based advertisements, which on their face appeared to be innocuous advertisements for a particular product or service which contained hidden,

and in many instances, encrypted computer code that, when displayed on a website, caused an internet user to lose control of his or her computer by causing the internet browser of any computer that visited the legitimate companies' websites to be "hijacked" or redirected to an IM-controlled website.

4.      It was further part of the conspiracy that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and JAMES RENO caused impairment to the integrity or availability of data, programs, systems and information of the Victim Companies' internet servers, by causing internet users who visited Victim Companies' websites to be "hijacked" or redirected from the intended content of the Victim Companies' websites to IM Scareware websites.

5.      It was further part of the conspiracy that defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and JAMES RENO agreed to conceal and hide the existence, purposes and acts done in furtherance of the conspiracy.

### Overt Acts

6.      In furtherance of the conspiracy and to accomplish its objectives, defendants  BJORN  DANIEL  SUNDIN,  SHAILESHKUMAR  P.  JAIN,

JAMES RENO, and others committed and caused to be committed the following overt acts in the Northern District of Illinois and elsewhere:

a.    On or about March 14, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted from Germany to Chicago, Illinois by means of an electronic mail communication from "Burnads.com" to Company A, an internet advertisement containing malicious code which caused impairment to the integrity or availability of data, programs, systems and information on Company A's website by causing internet users who visited Company A's website to be "hijacked" or redirected from the intended content of Company A's website to an IM Scareware website.

b.    On or about August 20, 2007, at Bellevue, Washington, and elsewhere, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted by means of an electronic mail communication from "UniqAds.com" to Company B, an internet advertisement containing malicious code which caused impairment to the integrity or availability of data, programs, systems and information on Company B's website by causing internet users who visited Company B's

website to be "hijacked" or redirected from the intended content of Company B's website to an IM Scareware website.

       c.    On or about November 5, 2007, at New York, New York, and elsewhere, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted by means of an electronic mail communication from "Infyte.com" to Company C, an internet advertisement containing malicious code which caused impairment to the integrity or availability of data, programs, systems and information on Company C's website by causing internet users who visited Company C's website to be "hijacked" or redirected from the intended content of Company C's website to an IM Scareware website.

       d.    On or about March 25, 2008, at West Valley City, Utah, and elsewhere, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted by means of an electronic mail communication from "ForceUp.com" to Company D, an internet advertisement containing malicious code which caused impairment to the integrity or availability of data, programs, systems and information on Company D's website by causing internet users who visited Company D's website to be "hijacked" or redirected from the intended content of Company D's website to an IM Scareware website.

e.     On or about April 4, 2008, at El Segundo, California, and elsewhere, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted by means of an electronic mail communication from "NetMediaGroup.net" to Company E, an internet advertisement containing malicious code which caused impairment to the integrity or availability of data, programs, systems and information on Company E's website by causing internet users who visited Company E's website to be "hijacked" or redirected from the intended content of Company E's website to an IM Scareware website.

f.     On or about April 3, 2008, at Springfield, Massachusetts, and elsewhere, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR P. JAIN, and others caused to be transmitted by means of an electronic mail communication from "NetMediaGroup.net" to Company F, an internet advertisement containing malicious code which caused impairment to the integrity or availability of data, programs, systems and information on Company F's website by causing internet users who visited Company F's website to be "hijacked" or redirected from the intended content of Company F's website to an IM Scareware website.

g.     On or about July 25, 2007, at San Francisco, California, and elsewhere, defendants BJORN DANIEL SUNDIN, SHAILESHKUMAR

P. JAIN, and others caused to be transmitted by means of an electronic mail communication from "NetMediaGroup.net" to Company G, an internet advertisement containing malicious code which caused impairment to the integrity or availability of data, programs, systems and information on Company G's website by causing internet users who visited Company G's website to be "hijacked" or redirected from the intended content of Company G's website to an IM Scareware website.

h.    On or about June 1, 2007, at Cincinnati, Ohio and elsewhere, defendant JAMES RENO, caused to be transmitted an electronic communication, in the form of an internet chat, in which defendant RENO provided technical assistance and support to IM personnel regarding a computer network associated with the fictitious advertising agency "Infyte," which was used to transmit electronic mail communications to Victim Companies that contained malicious code which caused impairment to the integrity or availability of data, programs, systems and information on Victim Companies websites by causing internet users who visited Victim Companies' websites to be "hijacked" or redirected from the intended content of Victim Companies' websites to IM Scareware websites.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWENTY-SIX

The SPECIAL MARCH 2010 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraph one of Count One of this indictment as though fully set forth herein.

2.     Company A's website was hosted on a protected computer.

3.     On or about March 14, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BJORN DANIEL SUNDIN,
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and
JAMES RENO,

defendants herein, knowingly caused the transmission of programs, information, codes, and commands from Germany to Chicago, Illinois; to wit: an electronic mail communication from "Burnads.com" to Company A that included an internet advertisement containing malicious code through which defendants intentionally caused impairment to the integrity and availability of data, programs, systems, and information on Company A's website without Company A's authorization by "hijacking" or redirecting the viewers of Company A's website away from the intended content of Company A's website to an IM Scareware website;

In violation of Title 18, United States Code, Sections 1030(a)(5)(A) and 2.

## FORFEITURE ALLEGATION

The SPECIAL MARCH 2010 GRAND JURY further alleges:

1.    The allegations in Counts One through Twenty-Six of this indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2).

2.    As a result of their violations of Title 18, United States Code, Sections 1343, 371, and 1030, as alleged in Counts One through Twenty-Six,

BJORN DANIEL SUNDIN,<br>
SHAILESHKUMAR P. JAIN, aka "Sam Jain," and<br>
JAMES RENO,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any and all right, title, and interest they may have in any property constituting, and derived from, proceeds they obtained directly or indirectly as the result of such violations.

3.    The interests of defendants subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(2), include the sum of approximately $100,000,000 and any and all funds held in account number 26000119211201, with beneficiary customer "Invest Capital LTD, 14 Ulitsa Dzerzhynskogo Kiev, Regionborispol District Borispol 08300 Ukraine," at Swedbank located in Kiev, Ukraine.

4.    If any of the forfeitable property described above, as a result of any act or omission by defendants:

   (a)    cannot be located upon the exercise of due diligence;

   (b)    has been transferred or sold to, or deposited with, a third party;

   (c)    has been placed beyond the jurisdiction of the court;

   (d)    has been substantially diminished in value; or

   (e)    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1);

   All pursuant to Title 18, United States Code, Section 982(a)(2).


A TRUE BILL:


_____

FOREPERSON



_____

UNITED STATES ATTORNEY